ANDREW, J.T.C.
This is a state tax action in which plaintiffs George F. Poppe, III and Louise M. Poppe seek to set aside an assessment made against them pursuant to the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq., (the act) by defendant Director of the Division of Taxation for the tax year 1978. The issue for decision by this court is whether, during the tax year at issue, George F. Poppe, III, (Poppe) was an independent contractor, and therefore entitled to deduct from his gross income costs and expenses incurred in the conduct of his business, or whether he was a common law employee, and thus not entitled to the *111 claimed deductions. The parties have stipulated the following facts.
During the tax year 1978, Poppe was a sales representative for Metropolitan Life Insurance Company (Metropolitan) assigned to the New Brunswick, New Jersey district. He has been (and continues to be) a licensed New Jersey agent for Metropolitan since 1971. Since 1964 and prior to becoming a New Jersey resident, plaintiff was a nonresident licensee of Metropolitan. He was authorized to sell life insurance, health insurance and variable annuities. As a sales representative, plaintiff was not limited to any particular geographical sales territory, but could solicit and sell insurance and annuities in any location in New Jersey on behalf of Metropolitan.
Metropolitan provided plaintiff with his own office and secretary, ten postage stamps per week, an office telephone, five hundred pieces of letterhead stationery and business cards.
Metropolitan has no production or sales quotas for its sales representatives. Sales representatives were not provided with prospective customer lists, nor were they required to make any reports regarding their activities, other than a weekly report of monies collected on policies sold. Metropolitan did provide charts and illustrations for specific insurance prospects upon the request of any sales representative.
Poppe was compensated on a commission basis. The Internal Revenue Service (IRS) W-2 forms attached to plaintiffs’ 1978 federal and state income tax returns, submitted as exhibits and incorporated in the stipulation of facts, indicate that Metropolitan withheld federal and state income and social security taxes from Poppe’s compensation.
Plaintiff received no reimbursement for any expenses incurred in servicing existing business or in soliciting new business, except as hereinafter set forth. Metropolitan did provide him with various benefits, described in exhibits submitted in connection with this action, which included a health care package, disability benefits, retirement benefits and a savings and investment plan.
*112 Union representation was available to sales representatives in accordance with an agreement between Metropolitan and the Insurance Workers International Union. Poppe has never been a member of a union and to the best of his information and belief, no sales representative in his office belonged to the union.
The parties also stipulated that Poppe was subject to the terms of the “Manual of Instructions for Agents” (manual), which was submitted as an exhibit and incorporated as part of the stipulation of facts. The manual contains the following relevant terms and conditions.
Poppe was required to transact all business with Metropolitan through, and subject to the general supervision and direction of, the district sales manager or sales manager in charge of plaintiff’s assigned district. He was obliged to perform the services of a sales representative in accordance with Metropolitan’s rules and regulations, and through the use of its forms. Poppe was also compelled to maintain all books, records and accounts required by Metropolitan in the manner and form prescribed by the company. Metropolitan had the right, at any time, to audit and examine such material.
By the terms of the manual, Poppe was prohibited from engaging in any other work, activity or occupation for financial remuneration between the days of Monday and Friday inclusive; he was also forbidden to be licensed to solicit insurance for any other company, except as provided by another Metropolitan publication, not furnished as an exhibit in these proceedings.
Sales representatives were entitled to vacations with compensation. They were provided with initial training by Metropolitan, and were reimbursed for the cost of certain company-approved courses. Representatives were prohibited from engaging in any advertising activity, except in a form previously authorized by Metropolitan, without obtaining special permission. Further, sales representatives were required to consult with the district sales manager and to secure Metropolitan’s approval prior to becoming candidates for, or accepting appointment to, positions relating to civic, political and governmental activities.
*113 Representatives were required to report to their offices two days in each week, but the district sales manager was authorized to permit a representative to report less frequently. The parties stipulated that, during 1978, Poppe spent approximately one day per week in his office. While the manual provided for reimbursement of certain travel expenses to and from the office, it was not indicated to this court whether Poppe was so reimbursed.
Finally, Poppe’s appointment could be terminated by Metropolitan without advance notice for breach of any of the conditions of his appointment, and at any time with two weeks’ notice. Similarly, Poppe could terminate his association with Metropolitan at any time on not less than two weeks’ notice.
Plaintiffs filed a joint 1978 New Jersey gross income tax return which listed a gross income of $23,774.04. Plaintiffs had an actual gross income of $40,484.44, but claimed the right to set off $16,398.42 as the business expenses of Poppe. Defendant issued a letter of assessment and determination dated May 26, 1981, stating that plaintiffs were liable for a gross income tax deficiency in the amount of $399.49, a penalty of $19.97 and interest, which continues to accrue. Defendant’s determination was based essentially on his disallowance of the deduction for business expenses.[1]
The act imposes a tax on all New Jersey gross income. N.J.S.A. 54A:1-2. “New Jersey gross income” is defined, in relevant part, as:
a. Salaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered whether in cash or in property;
b. Net profits from business. The net income from the operation of a business, profession, or other activity, after provisions for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes but without deduction of taxes based on income.... [N.J.S.A. 54A.5-1].
Plaintiffs contend that Poppe was an independent contractor, not an employee of Metropolitan, and that therefore they are *114 entitled to deduct Poppe’s costs and expenses incurred in the conduct of his business pursuant to N.J.S.A. 54A:5-1(b). It is defendant’s position that Poppe was an employee and that plaintiffs’ gross income is defined by N.J.S.A. 54A:5-1(a), which permits no deductions for business expenses. See Domenick v. Taxation Div. Director, 176 N.J.Super. 121, 422 A.2d 443 (App. Div.1980).
Whether plaintiff was an employee or an independent contractor is a factual question. Boudrot v. Taxation Div. Director, 4 N.J.Tax 268 (Tax Ct.1982). In Boudrot the court enumerated eight relevant factors which distinguish an independent contractor from a common law employee. Id. at 274. These factors are:
(1) the relationship which the parties believe they have created; (2) the extent of control exercisable (regardless of actual exercise) by the person receiving the benefit of the services over the manner and method of performance; (3) whether the person rendering the service undertook substantial costs to perform the service; (4) whether the service required special training or skill; (5) the duration of the relationship between the parties; (6) whether the person rendering the service had a risk of loss; (7) whether the person who received the benefit of the services could discharge without cause the person who performed the services; (8) the method of payment (by time or by job), [ibid.; citations omitted]
In assessing these apposite considerations or factors it is clear that any one factor is not controlling; rather, the result is dictated by a careful weighing of all the special facts and circumstances. Ibid.
As an initial consideration it may reasonably be concluded that Poppe and Metropolitan intended to create an employer-employee relationship, despite Poppe’s contention that he never considered himself an employee. Metropolitan issued a IRS W-2 form to Poppe, and withheld state and federal income taxes. While these facts are not conclusive evidence of the relationship between Metropolitan and Poppe, the IRS W-2 form is normally issued by an employer to an employee. Id. at 274-275. The withholding of taxes is also consistent with an employer-employee relationship. Id. at 275.
*115 There is also the provision in the manual for vacation with compensation. While Poppe asserts that he has never received vacation pay, there is nothing in the record before this court that would contradict the manual, which was incorporated and made a part of the stipulation of facts in this matter. Vacation pay, too, would seem indicative of an employer-employee relationship.
Further, Poppe was provided with several benefit plans by Metropolitan. These plans were described in booklets prepared by Metropolitan and submitted as exhibits in this action. One is entitled “Summary of Your Insurance and Retirement Program and Other Employee Benefit Plans.” The other is entitled “Highlights of Your Metropolitan Benefits Program” and includes a statement addressed “To All Employees.”
Poppe argues that the latter pamphlet was intended for “general distribution” and that the statement prepared for all “employees” is not dispositive of his status as either an independent contractor or an employee. He also contends that Metropolitan provides these benefits because the commissions paid to him are substantially less than those paid to an insurance broker. Again, Poppe has not pointed to any evidence in the record before this court that would confirm this. Taken as a whole, the evidence supports the conclusion that Poppe and Metropolitan intended to create an employer-employee relationship.
The second factor listed in Boudrot, that of control, has been considered significant by New Jersey courts seeking, in other contexts, to distinguish between an independent contractor and an employee. See, e.g., Miklos v. Liberty Coach Co., 48 N.J.Super. 591, 602, 138 A.2d 762 (App.Div.1958); Falk v. Unger, 33 N.J.Super. 589, 594, 111 A.2d 283 (App.Div.1955).
Here, Poppe, other than to account for monies collected, was not required to report his sales activities or to account for his time to Metropolitan; he had no sales quota to meet; he was not confined to any particular sales territory, and he apparently did not follow a prescribed sales presentation. On the other *116 hand, he was subject to the general supervision of the district sales manager; he was forbidden to engage in any other activity for financial remuneration during the work week; he could *not solicit insurance for any other company except as specified by Metropolitan; he was required to spend some time in his office, and he had to maintain books, records and accounts in the manner prescribed by Metropolitan, which was also free to examine his records. Additionally, Poppe’s advertising was controlled by Metropolitan. Even Poppe’s civic and political activities were subject to Metropolitan’s approval. Most importantly, Poppe was required to perform his services in accordance with Metropolitan’s rules and regulations. Thus, regardless of the company’s actual control over Poppe’s activities, there existed the potential for a great degree of supervision by Metropolitan. Pursuant to Boudrot the test is one of control that could be exercised rather than of actual exercise.
Considering the other factors enumerated in Boudrot, the length of Poppe’s association with Metropolitan, from 1964 to the present, is indicative of an employer-employee relationship. This conclusion is also suggested by Metropolitan’s freedom to discharge Poppe without cause with only two weeks’ notice. Also, despite the fact that the method of compensation, i.e., commissions, is perhaps more commonly associated with independent contractors, it should be noted that the taxpayer in Domenick v. Taxation Div. Director, supra, was, however, also paid on a commission basis, yet was clearly an employee. Finally, whatever special training or skill Poppe possessed, it was apparently supplied by Metropolitan, either in the form of his initial training or as reimbursement for approved courses.
It is also clear, however, that Poppe undertook substantial costs to perform his service. While Metropolitan furnished his office, paid for his secretary and office phone, and provided certain business supplies, Poppe did expend more than $16,000 *117 for business costs during the 1978 tax year.[2] If Poppe had been less successful in his sales efforts, his expenses might well have exceeded his commission income, thus exposing him to the risk of loss. Nevertheless, even though there may be certain indicia in this case that might militate against the finding of an employer-employee relationship, it is the entire factual pattern involved that must be weighed and considered.
Under the factors enumerated in Boudrot, Poppe appears, on balance, to be an employee and not an independent contractor. The two particularly persuasive considerations are: (1) the parties seem to have intended to create an employer-employee relationship and (2) Metropolitan retained the ability to exercise considerable control over plaintiff’s activities. Metropolitan was interested not only in the end result of plaintiff’s work, but also in the way in which it was done. See Miklos v. Liberty Coach Co., supra 48 N.J.Super. at 602, 138 A.2d 762; Falk v. Unger, supra 33 N.J.Super. at 594, 111 A.2d 283; cf. Landwehr v. Taxation Div. Director, 6 N.J.Tax 66 (Tax Ct.1983).
The authorities relied upon by plaintiffs, in which there was a finding of an independent contractor status, are substantially different factually than the present case and do not support their position. In Simpson v. Commissioner, 64 T.C. 975 (1975), which involved liability for self-employment tax, the taxpayer, an insurance agent, and an insurance company had entered into an agreement which specifically denominated the taxpayer an independent contractor, and negated any intent to create the relationship of employee and employer. The taxpayer received no vacation pay, and did not participate in any company-funded pension, profit-sharing, or medical plans. He provided his own office and paid all office expenses, including a secretary’s salary, utilities and telephone. Finally, the company could discharge him only on three months written notice.
*118 In Reserve Nat. Ins. Co. v. U.S., 74-1 U.S.T.C. (CCH) ¶ 9486 (W.D.Okl.1974), an insurance company contested the status of its agents as employees in connection with its liability for federal employment taxes. Again, the contract between the agents and the insurance company recited that the salesmen were independent contractors. The company did not furnish offices, vacation pay or any other benefit plans for its salesmen. There was, in general, a lesser degree of control and supervision than exists in the present case by the company over the work of its agents.
As an employee of Metropolitan and not an independent contractor within the intendment of N.J.S.A. 54A:5-1(b), plaintiff is not entitled to deduct from his gross income the expenses incurred in his sales activities. Judgment will be entered affirming the assessment and determination of defendant.

 A portion of defendant’s assessment related to a medical expense deduction, the determination of which was not contested by plaintiffs.

The IRS W-2 form for George F. Poppe, III shows compensation for 1978 in the amount of $36,777.99. The remainder of the gross income claimed to be correct by defendant, i.e., $40,484.44, is attributable to earnings of Louise M. Poppe.